# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>OfferUp, Inc. 1745 114th Avenue SE, Bellevue, WA Host of Account with user ID 29518932 | Case No. **23mj3410-SBC** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the **Western** District of **Washington**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 USC 371, 545 | Conspiracy, Importation Contrary to Law and Smuggling |
| 42 USC 7671a, 7671c, 7675 and 7413(c)(1) | Illegal Import/Sale of Regulated Substance |

The application is based on these facts:

See attached affidavit, incorporated herein

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

EPA Special Agent Gabrielle Buda
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 09/18/2023

*Judge's signature*

City and state: San Diego, California        Hon. Steve B. Chu, US Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Gabrielle Buda, having been duly sworn, do hereby state that the following is true to my knowledge and belief:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to obtain records from OfferUp Inc. (herein referred to as "OfferUp") in support of an investigation into the internet sales of a regulated substance. The purpose of the warrant is to seize evidence, as further described in Attachment A, of violations of federal law, namely Conspiracy, in violation of 18 U.S.C. §371; Smuggling and Importation Contrary to Law, in violation of 18 U.S.C. § 545; and the Illegal Importation and Sale of Regulated Substances, in violation of Title 42, United States Code, Section 7413(c) and Title 40, Code of Federal Regulations, Sections 84.5(b) and (f), as further described in Attachment B. The Target OfferUp Account (herein referred to as the "**Target Account**") is as follows:

>OfferUp User ID: 29518932
>Account Name: Mike Hart
>Email: mikehart858664@gmail.com

2. The **Target Account** data is currently in the possession of OfferUp and is stored at 1745 114th Ave SE, Bellevue, WA 98004.

3. Michael Anthony HART was stopped at the San Ysidro Port of Entry ("POE") on October 18, 2022, after undeclared refrigerant canisters containing hydrofluorocarbons (HFCs) were located in the vehicle he was driving as he was attempting to enter the United States.

4. HART's cell phone was seized, and a search warrant was obtained to search his cell phone. Information found on HART's cell phone showed contact with numerous clients to sell HFCs in the U.S. Subsequent interviews of these contacts revealed that HART was selling HFCs on the online website, OfferUp.

1

*Affidavit in Support of Search Warrant*

5. In February 2023, a Grand Jury subpoena was issued to OfferUp. The Grand Jury subpoena response from OfferUp provided user account information and listings posted by HART. HART posted a total of 13 listings for a total of 39 various types of HFCs between the dates July 14, 2022, and December 18, 2022.

6. I contacted OfferUp on August 17, 2023, requesting sales records to be produced by OfferUp in accordance with the Grand Jury Subpoena request. A response from OfferUp stated that a search warrant would be needed for OfferUp to release those records.

7. Based on the information below, there is probable cause to believe that a search of the **Target Account** will produce evidence of the aforementioned crimes, as more particularly described in Attachment B.

8. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all the information known to investigators about this investigation. It contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, conversations with other investigators experienced in the area of illegal smuggling of goods investigations, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

## TRAINING AND EXPERIENCE

9. I am a Special Agent for Environmental Protection Criminal Investigation Division ("EPA-CID") and have been employed since April 2019. I received a Bachelor of Science degree from the University of Delaware in Environmental Science in 2013. Prior to my employment with EPA-CID, I was employed as a civil investigator with the Environmental Protection Agency (EPA). In my position as an EPA civil

*Affidavit in Support of Search Warrant*

investigator, I was trained in environmental law and regulation and conducted civil investigations to identify EPA violations.

10. During my experience in law enforcement, I have had training in investigating the distribution of illegal goods smuggled from Mexico. My experience includes many arrests, searches, and interviews related to investigations of smuggling and the sale of illegal goods. In addition to conducting arrests, searches, and interviews, I also have had training to identify HFCs and I have consulted with EPA regulators to understand the requirements for the legal importation and sale of HFCs in the U.S. Through my experience and training, I have gained a working knowledge and insight into the normal operational habits of illegal goods smugglers and distributors, including those who attempt to import illegal goods into the United States from Mexico at the San Diego International Ports of Entry.

11. In my current position with EPA-CID, my duties include investigating illegal importation and sale of HFCs in addition to the investigation of criminal violations of other federal environmental statutes.

## BACKGROUND

12. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for regulated substances, such as those containing HFCs, to be smuggled into the United States from Mexico. HFCs are greenhouse gases commonly used in a wide variety of applications, including refrigeration, air-conditioning, building insulation, fire extinguishing systems, and aerosols. HFCs have high global warming potential, raising concern about their impacts as they become increasingly used as replacements for ozone-depleting substances, and as economic growth spurs demand for new equipment, especially in the refrigeration/air conditioning sector.

13. As part of the American Innovation and Manufacturing Act of 2020, Congress amended the Clean Air Act (CAA) to include an additional list of regulated

3

*Affidavit in Support of Search Warrant*

substances, at 42 U.S.C. §7675(c)(1), which include HFC-125, HFC-134 and HFC-134a. Congress further directed the Administrator of the EPA to devise a schedule to phase out the use of these regulated substances, and indicated that any such rules or regulations promulgated by the EPA were to be enforceable under Section 7413 of the CAA as if they had been expressly included in subchapter VI (Section 7671 of the CAA, which relates to ozone depleting substances[1].)  Thereafter, the EPA promulgated the regulations found at 40 CFR §84.5, which, beginning on January 1, 2022, prohibit the importation of bulk regulated substances without a consumption allowance. Section 7413(c)(1) of the CAA provides that anyone who knowingly violates a requirement or prohibition relating to stratospheric ozone control found in subchapter VI shall be guilty of a felony.

14.  Based on my training and experience, and consultation with other agents who investigated smugglers of merchandise and refrigerants, I know that smugglers of regulated substances containing HFCs and other regulated refrigerants sell these items on online website such as OfferUp.

**FACTS IN SUPPORT OF PROBABLE CAUSE**

15.  According to CBP reporting, at about 7:40 a.m. on October 18, 2022, Michael Anthony HART entered the United States at the San Ysidro POE as the driver and registered owner of a white 2008 Dodge Caravan, bearing California license plates. As the vehicle was waiting in pre-primary lane 19, the CBP Officer asked HART if he had anything to declare, and HART responded that he only had his tools in the van. The CBP Officer then inspected the van and noticed a paint tarp covering boxes that were located on the interior floor of the van. The CBP Officer observed tools and other miscellaneous items on top of the paint tarp. When the CBP Officer moved the paint

---

[1] Section 7671a of Title 42 lists the regulated ozone depleting substances, which include CFC-12, commonly sold as R-12 Freon, a regulated refrigerant.  Section 7671c provides the authority for the EPA to set consumption allowances for CFCs, and the phase out of production and consumption of CFCs, which was complete in the year 2000.  Based on conversations with others involved in enforcement of these rules, I know that R-12 Freon is a regulated refrigerant that has frequently been smuggled into the United States from Mexico.

4

*Affidavit in Support of Search Warrant*

tarp, he discovered that the labels on the boxes described their contents as Freon 404A from China. The vehicle was then referred to Secondary for further inspection. In the secondary lot, a CBP Officer inspected the vehicle and located a total of ten boxes, each containing one canister of Freon 404A. According to the labels on the boxes, each canister weighed 24 pounds.

16. I responded to the POE along with a Special Agent from Homeland Security Investigations to interview HART and to further inspect the vehicle. I found four receipts within the vehicle from two different stores in Mexico showing the purchase of a total of 35 canisters of refrigerant. All four receipts were dated between July 21, 2022, and October 13, 2022. After being advised of his Constitutional rights and waiving his rights in writing, HART stated that he worked in construction repairing and installing air conditioning units. HART stated that his girlfriend ordered the refrigerant canisters from a store in Tijuana and has them delivered to her house in Mexico, and that once a week HART brought the canisters from Mexico into the United States. HART stated that each canister cost approximately $130-$140 USD in Mexico. HART stated that he used some of the refrigerant himself when he installed or repaired air conditioning units, and he sold the rest of the canisters to others he knows in the air conditioning industry for approximately $275 per canister.

17. According to their labels, the canisters found in HART's vehicle were labeled "Freon 404A," which contain regulated HFCs. Specifically, the canisters contain HFC-143a, HFC-125, and HFC-134a, all of which are regulated HFCs under U.S. law. In the United States, federal regulations limit the importation of regulated HFCs to individuals who have been granted a consumption allowance. A search of the database of individuals granted a consumption allowance for regulated HFCs in the United States showed that HART holds no such allowance. Additionally, because these regulated HFCs were imported without a consumption allowance, HART is not authorized to sell them in the United States.

5

*Affidavit in Support of Search Warrant*

18. One cell phone was seized from HART and a search warrant was obtained to search the cell phone. Review of the cell phone showed that HART exchanged messages with several individuals regarding the sale of various types of HFCs and regulated refrigerants. The messages contained photos of canisters of refrigerants, as well as sale prices. These messages were observed to be sent and/or received between July 2022 and November 2022. The messages appeared to relate to postings from the **Target Account** on OfferUp.

19. In February 2023, a Grand Jury subpoena was issued to OfferUp for records related to the **Target Account**. The Grand Jury subpoena response from OfferUp provided user account information identifying Hart as the subscriber of the **Target Account** and listings posted by HART. HART posted a total of 13 listings for a total of 39 various types of regulated refrigerants between the dates July 14, 2022, and December 18, 2022.

20. Regulated refrigerant smuggling conspiracies, like other smuggling conspiracies, generally entail detailed and intricate planning as part of efforts to evade detection by law enforcement. In my professional training and experience, I am aware that this requires planning and coordination in the days and weeks (and often months) prior to the relevant smuggling-related event, and sales occur days and weeks after smuggling events.

21. I contacted OfferUp on August 17, 2023, requesting sales records, and transaction and banking information from the **Target Account** from OfferUp in accordance with the Grand Jury Subpoena request. A response from the OfferUp legal team stated that a search warrant would be needed for OfferUp to release these records.

22. Given the facts surrounding HART's detention, and based upon my experience and training, as well as consultation with other law enforcement officers experienced in the smuggling of regulated substances, there is probable cause to believe that evidence of the offenses of conspiracy, and illegal importation and sale of

*Affidavit in Support of Search Warrant*

regulated HFCs will be found in the **Target Account**. Such evidence, which could be in the form of communications, sales records, and data, would be relevant to proving conspiracy, smuggling, the illegal importation and/or distribution of regulated substances by:

    a.    tending to indicate efforts to import and sell and use regulated HFCs and other regulated refrigerants;

    b.    tending to indicate contact with individuals regarding the location(s) at which the regulated HFCs and other regulated refrigerants are being used or sold;

    c.    tending to identify sale quantities and prices of HFCs and other regulated refrigerants;

    d.    tending to identify co-conspirators, criminal associates, or others involved in importation and/or sale of regulated HFCs and other regulated refrigerants;

    e.    tending to identify travel to or presence at locations involved in the importation and/or sale of regulated HFCs and other regulated refrigerants;

    f.    tending to identify proceeds associated with the importation and/or sale of regulated HFCs and other regulated refrigerants in the United States;

    g.    images of HFCs and other regulated refrigerants;

    h.    tending to identify the user of, or persons with control over or access to, the **Target Account**; and

    i.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

23.    Based on the evidence gathered in this case, I believe that the appropriate date range for the search of the **Target Account** is from July 1, 2022, up to December 31, 2022.

*Affidavit in Support of Search Warrant*

# METHODOLOGY

24.     OfferUp is an Internet company that, among other things, provides electronic communication services to its subscribers.  OfferUp's electronic mail service allows its subscribers to exchange electronic communications with others through the Internet.   OfferUp's subscribers and users access OfferUp's services through the Internet.

25.     Subscribers and users of OfferUp use screen names during communications with others. The screen names may or may not identify the real name of the person using a particular screen name. Although OfferUp requires users to subscribe for a free OfferUp account, OfferUp does not verify the information provided by the subscriber for its free services.

26.     At the creation of an Offer Up account and for each subsequent access to the account, OfferUp logs the Internet Protocol ("IP") address of the computer accessing the account. An IP address is a unique address through which a computer connects to the Internet.  IP addresses are leased to businesses and individuals by Internet Service Providers.  Obtaining the IP addresses that have accessed a particular OfferUp account often identifies the Internet Service Provider that owns and has leased that address to its customer.  Subscriber information for that customer then can be obtained using appropriate legal process.

# PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

27.     Federal agents and investigative support personnel are trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of OfferUp are not.  It would be inappropriate and impractical for federal agents to search the vast computer network of OfferUp for the relevant accounts and then to analyze the contents of those accounts on the premises of OfferUp.  The impact on OfferUp's business would be disruptive and severe.

8

*Affidavit in Support of Search Warrant*

28. Therefore, I request authority to seize all content, including electronic mail and attachments, stored instant messages, stored voice messages, photographs, and any other content from the OfferUp account, as described in Attachment B. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of OfferUp, to protect the privacy of OfferUp subscribers and users whose accounts are not authorized to be searched, and to effectively pursue this investigation, the U.S, E.P.A. seeks authorization to allow OfferUp to make a digital copy of the entire contents of the account(s) subject to seizure. That copy will be provided to me or to any authorized federal agent. The copy will be imaged, and the image will then be analyzed to identify communications and other electronic records subject to seizure pursuant to Attachment B. Relevant electronic records will be copied to separate media. The original media will be sealed and maintained to establish authenticity, if necessary.

29. Analyzing the data to be provided by OfferUp may require special technical skills, equipment, and software. It may also be very time-consuming. Searching by keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Keyword searches do not capture misspelled words, reveal the use of coded language, or account for slang. Keyword searches are further limited when electronic records are in or use foreign languages. Certain file formats also do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database and spreadsheet applications, which files may have been attached to electronic mail, do not store data as searchable text. Instead, such data is saved in a proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically.

9

*Affidavit in Support of Search Warrant*

30. Internet Service Providers do not always organize the electronic files they provide chronologically, which makes review even more time consuming and may also require the examiner to review each page or record for responsive material.

31. Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. Keywords need to be modified continuously based upon the results obtained and, depending on the organization, format, and language of the records provided by the ISP, examiners may need to review each record to determine if it is responsive to Attachment B. The personnel conducting the examination will complete the analysis within ninety (90) days of receipt of the data from the service provider, absent further application to this court.

32. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic communications that identify any users of the subject account(s) and any electronic communications sent or received in temporal proximity to incriminating electronic communications that provide context to the incriminating communications.

33. All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

34. No prior attempts were made to obtain this evidence other than those described herein.

**CONCLUSION**

35. Based on all the facts and circumstances described above, I believe probable cause exists to conclude that HART used the **Target Account** to facilitate the offenses of conspiracy, smuggling and illegal importation and/or sale of regulated substances, and to communicate with co-conspirators. The **Target Account** was likely

10

*Affidavit in Support of Search Warrant*

used to facilitate the offenses by transmitting and storing data, which constitutes evidence of violations of Title 18, United States Code, Sections 371 and 545; Title 42, United States Code, Sections 7413(c), 7671a and 7671c, and Title 40, Code of Federal Regulations, Sections 84.5(b) and (f).

36. Based on information obtained from OfferUp, there is probable cause to believe that evidence of the offenses committed by HART continue to exist in the **Target Account**. As stated above, I believe that the date range for this search is from July 1, 2022, up to and including December 31, 2022.

37. WHEREFORE, I request that the court issue a warrant authorizing EPA-CID Special Agents and/or other federal and state law enforcement officers specially trained in account evidence recovery, to search the **Target Account**, described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Gabrielle Buda*

Gabrielle Buda, Special Agent
Environmental Protection Agency
Criminal Investigation Division

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 18th day of September, 2023.

HON. STEVE B. CHU
United States Magistrate Judge

11

*Affidavit in Support of Search Warrant*